**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| CARDTEK INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE KROGER CO. AND STARBUCKS CORPORATION, <br><br> Defendants. | Case No. 2:23-cv-00045 |

### CARDTEK INTERNATIONAL, INC.'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cardtek International, Inc. ("Cardtek" or "Plaintiff") by and through its undersigned counsel, pleads the following against Defendants the Kroger Co. and Starbucks Corporation, and alleges as follows:

### THE PARTIES

1.      Plaintiff Cardtek International, Inc. ("Cardtek") is located at 1900 Mill Road Manhattan, Kansas 66502. Cardtek is the assignee and exclusive owner of all rights, title, and interest in U.S. Patent Nos. 7,039,593 ("the '593 Patent"), 8,600,770 ("the '770 Patent"), and 10,628,818 ("the '818 Patent"), titled the "Payment Convergence System and Method."

2.      Defendant The Kroger Co. is an Ohio corporation having its principal place of business at 1014 Vine Street Cincinnati, Ohio 45202.

3.     Defendant Starbucks Corporation is a Washington corporation having its principal place of business at 2401 Utah Avenue South, Seattle, Washington, 98134.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq.

5.     This Court has personal jurisdiction over Defendants because they are present in and regularly transact and conduct business in and with the residents of this District and the State of Texas, such as, regularly doing and soliciting business all across Texas and engaging in persistent conduct and deriving substantial revenue from goods and services provided to customers in the State of Texas, including in the Eastern District of Texas.

6.     Plaintiff's causes of action arise from Defendants' contacts with and activities in this District and the State of Texas. Defendants have committed acts that infringe the asserted patents within this District and the State of Texas by conducting business in the District, by at least offering for sale and selling products, programs, and services that practice the claimed inventions of the Patents-in-Suit. In addition, Defendants own and operate their stores in this District that support and process products and services that practice the claimed inventions of the Patents-in-Suit.

7.     Venue is proper in this District pursuant to U.S.C. §§ 1391(b), (c), (d) and 1400(b) because Defendants have a permanent and continuous presence in, have stores where they regularly conduct business in, have committed acts of infringement in, and maintain regular and established places of businesses in this Eastern District of Texas.

8.     Cardtek is the assignee and owns all right, title, and interest to U.S. Patent Nos.

- 2 -

7,039,593 ("the '593 Patent"), 8,600,770 ("the '770 Patent"), and 10,628,818 ("the '818 Patent").

## THE PATENTED TECHNOLOGY

9.    The present matter involves U.S. Patent Nos. 7,039,593, 8,600,770, and 10,628,818, which claim systems and methods that converge multiple independent payment options into a single payment vehicle ("the Smart Card"). Smart Cards have on-card dynamic data processing capabilities that permit the combination of multiple applications onto a single card. By way of example, a single Smart Card can function as an individual's driver license, their credit card, their phone card, and their health insurance card. The Smart Card does so by storing all of the individual's multiple cards on a single platform (i.e., the Smart Card), thereby creating a secure and efficient way to store a variety of interrelated applications within a single vehicle.

10.    Specifically, the technology converges all multiple independent payment sources/options into one card for handling payment for transactions, and consequently involves multiple relationships which are all centered around this one Smart Card. The Smart Card stores information about relationships that exist between the cardholder and its available payment options or sources.

11.    The Point of Sale ("POS") is the hub of the Patents-in-Suit, and, through its processing capabilities, converges all payment sources, along with any accompanying information that is stored on the Smart Card. By converging the payment options, or sources, the POS processes that information to determine the amount that each source is to pay and then obtains the payment from the multiple independent sources. The current Patents-in-Suit's technology therefore acts as a convenient medium for storage of information regarding payment sources to effectuate a payment, all in a single transaction occurring at the POS.

12.    Each layer of payment information stored contains a different type of information

that can be used independently from the information of all other layers. For example, the Smart Card can store first party information, which includes any payment that is directly funded by the card user, (e.g., user's credit card account, debit card, check, EBT or any other account in which the funds are controlled by the patient), credit card information (e.g., contact information for the payment sources, member identification numbers, policy terms, credit limits, etc.), secondary payment information (e.g., benefits that reduce payment amount to be paid with the Card Holders Credit Card), and third party payment information (e.g., insurance coverage that is secondary to a primary insurance policy, any private line of credit accounts, such as those related to healthcare, governmental assistance, gifts certificates, charitable gifts, prepayments, loyalty credit, or any other source that is not the primary insurance company and is not a direct payment from the patient).

13.    Then, the Smart Cards POS terminal combines all this information / various payment methods to affect a transaction through this single payment vehicle. The technological process operates as follows. First, a total cost for the transaction (i.e., the "transaction total") will be determined at the POS. Then, information regarding the payment methods for the transaction is accessed at the POS terminal, which is a feature that is part and parcel to the Smart Card. Once the POS gathers the appropriate payment information ("convergence information"), the POS's processing system uses the convergence information to determine what amount each payment source is responsible for, and what it consequently owes to satisfy the total amount due for the relevant transaction. After the POS converges and processes the information to determine the specified amount that each payment source owes based on the transaction, the POS then collects the respective payment amounts from each source.

14.    To promote privacy and safety, each payment application must be kept separate from the other applications; and then that appropriate information only becomes available to use for a

specific transaction, which is done through the nexus/ heart of the Smart Card technology, i.e., the POS. The convergence at the POS is the only time, and place, that all information being stored on the Smart Card is merged. At any other point in time, all information is kept separate. The POS then processes the payment sources and determines the amount each payment source owes to effectuate the transaction. Simply put, it presents a secured system for making multiple types of information available at a single convergent point, i.e., the POS.

### FIRST CLAIM

**(Infringement of U.S. Patent No. 7,039,593)**

15.     Cardtek re-alleges and incorporates herein by reference Paragraphs 1-16 of its Complaint.

16.     The '593 Patent, entitled "Payment Convergence System and Method" was duly and lawfully issued on May 2, 2006.  A true and correct copy of the '593 Patent is attached hereto as Exhibit 1.

17.     The '593 Patent names Robert David Sager as inventor. Ex. 1 at 1.

18.     The '593 Patent has been in full force and effect since its issuance.  Cardtek owns by assignment the entire right, title, and interest in and to the '593 Patent, including the right to seek damages for past, current, and future infringement thereof.

19.     The '593 Patent is "a method and system …provided for convergence of multiple independent payment methods." *Id*.

20.     The '593 Patent explains that the use of Smart Card technology "permits multiple independent payment options to be bundled into a single payment vehicle." *Id*. at 6.

21.     The '593 Patent states that "[t]he inventions also permits the convergence at the point of sale (POS) of information about multiple independent payment options using the Smart Card technology." *Id*.

22.     Cardtek is informed and believes, and thereon alleges, that Defendants have infringed and unless enjoined will continue to infringe one or more claims of the '593 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, Cardtek's technology that use the POS payment convergence system and method in an infringing manner.

23.     For example, the  accused products embody every limitation of at least claim 1 of the '593 Patent, literally or under the doctrine of equivalents, as set forth below.  The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

24.     Defendants' infringing technology comprising: "A method of payment for a transaction; establishing a transaction total; storing convergence information on a portable storage medium, said convergence information including data about a plurality of payment sources for the transaction and said convergence information including processing instructions, said processing instructions including order information for utilization of said plurality of payment sources";

25.     Defendants' infringing technology also include: "obtaining said convergence information from said storage medium at a point of sale terminal while said storage medium is located at the location of said point of sale terminal processing of said order information by said point of sale terminal to determine from said plurality of payment source, a primary payment source to be utilized first for the transaction, and at least one secondary payment source to be utilized for the transaction after said primary payment source is utilized, utilizing of said convergence information to communicate electronically through said point of sale terminal with said primary payment source to establish a primary payment amount from said primary payment source, determining a secondary payment amount to be obtained from said at least one secondary

payment source to satisfy said transaction total; and utilizing of said convergence information to communicate electronically through said point of sale terminal with said at least one secondary payment source to secure payment of said secondary payment amount; wherein at least two payment sources are utilized to satisfy said transaction total."

### *Kroger Rewards Card Infringement of Patent '593 Claim 1*

26.     Kroger REWARDS ACH Card ("the REWARDS Card") is used to perform a payment transaction. The REWARDS Card is "a rewards card and check card all in one! But instead of writing a check, you simply swipe the Kroger REWARDS Debit Card, enter a PIN and the funds will be taken out of your checking or savings account." *See* https://www.krogermastercard.com/credit/faqs.do.

27.     The REWARDS Card owner can scan the card, access the "fuel points" account, redeem fuel points from that account to reduce the purchase total, and then utilize the credit card account to satisfy the balance of the total all in a single transaction at a POS terminal.

28.     The Kroger REWARDS Card, moreover, establishes a transaction total. The technology operates using a processing system that gives cardholders discounts when they "scan, redeem points and pay with [the] Kroger REWARDS World Mastercard in order to receive the fuel discount." *Id*.

29.     To do this, The REWARDS Card stores convergence information on a portable storage medium, wherein said convergence information includes data about a plurality of payment sources for the transaction and said convergence information includes processing instructions, with processing instructions including order information for utilization of said plurality of payment sources.

30.     For example, the REWARDS Card is a smart credit card and portable storage

medium that stores data about a plurality of payment sources including a first account associated with a "Shopper's Card number", the accumulated rewards points, and the Shopper's card fuel points rewards account associated with the Shopper's Card number and rewards card.

31.     The card also stores information including processing instructions, such as instructions relating to the order of using the payment sources (e.g., "you must scan, redeem and pay with your Kroger REWARDS World Mastercard" in order to receive the fuel discount."). *Id*. The REWARDS card utilizes processing instructions that include order information for utilization of said plurality of payment sources, which distinguishes the card being used to process the order and payments when the Fuel Points discount is available.

32.     The REWARDS card also obtains convergence information from a storage medium at the POS terminal. For example, if the customer is required to scan the REWARDS card, the convergence information is necessarily obtained at the POS terminal where the rewards card is scanned.

33.     The REWARDS card processes said order information through the POS terminal to determine, from the plurality payments sources, a primary source first utilized for the transaction, and at least one secondary payment source to be utilized for the transaction after the primary payment is expended.

34.     For example, every time 100 fuel points is redeemed, the balance owed is reduced by 55¢. To therefore determine the amounts to be paid, the total transaction cost must be obtained. Next, the primary account (fuel rewards account) is accessed and points are redeemed to decrease the total owed. Then the balance owed by the REWARDS card can be determined.

35.     The REWARDS card then uses the convergence information to communicate electronically through the POS terminal, determines a secondary payment amount to obtain from

at least one of the secondary payment sources (e.g., the REWARDS Card) to satisfy the transaction total. Then, through the POS, the Card uses the convergence information to secure payments from the secondary source amount (e.g., the REWARDS Card), such that at least two payments sources are used to satisfy the remaining transaction total. The redeemed fuel points (primary payment source) and the credit from the REWARDS Card (secondary payment source) collectively equal and satisfy the transaction total.

*Starbucks Rewards Card Infringement of Patent '593 Claim 1*

36.    Starbucks Rewards Card ("the Rewards Visa" or "the Card") is used to perform a payment transaction (i.e., the Card Holder can "choose to redeem your Stars for a free beverage customization" by asking "your barista when your paying at a participating Starbucks store."). *See* https://www.starbucks.com/rewards.

37.    The Starbucks Rewards Card establishes a transaction total. For example, you "can choose to redeem your Stars for a free beverage customization, drink, food, merchandise (under $20) or package of coffee before the Stars expire—either choose to redeem your Reward in the Starbucks app when ordering ahead or ask your barista when you're paying at a participating Starbucks store." *Id*. Because the transaction to be redeemed must be under $20, the transaction total must be calculated first.

38.    The Rewards Visa stores convergence information on a portable storage medium, wherein said convergence information includes data about a plurality of payment sources for the transaction and said convergence information includes processing instructions, with said processing instructions including order information for utilization of said plurality of payment sources.

39.    For example, the Rewards Visa is a physical card and signing up for it links the

physical card to a stars rewards account (primary payment source). When the user makes a purchase, the account is updated (e.g., "4,500 Bonus Stars After You Spend $500 On Purchases In the First 3 Months From Account Opening"). *Id*. The Starbucks Rewards Visa account is one payment method, the stars account is another, such that there is a plurality of payments.

40.    The Card obtains said convergence information from a storage medium at a POS terminal. The Rewards Card processes the order information through the POS terminal to determine from the plurality payments sources, a primary source utilized first for the transaction, and at least one secondary payment source to be utilized for the transaction after the primary payment is utilized.

41.    For example, a user can redeem 25 stars (using the stars account, or primary payment source), and then may offset the cost of a drink by redeeming the stars (e.g., if a customer wants a beverage modifier, such as an added espresso shot, there is necessarily a remaining cost associated with the drink.).

42.    To effectuate full payment of the total transaction cost, the POS must first calculate a transaction total, identify the stars account (primary payment sources) associated with the Visa Card offered for payment, as well as the Visa Card account itself (secondary payment source).

43.    The Card then determines a secondary payment amount from one of the available payment sources to satisfy the remainder of the transaction (e.g., the remaining amount to be charged on the Visa after the value of beverage modification has been deducted). The convergence of the primary and secondary payment sources are communicated electronically through the POS, resulting in at least two payments sources being utilized to satisfy the transaction total.

44.    On information and belief, the infringing technology in the Defendants' Rewards Cards was obtained directly or indirectly from disclosure later patented by Robert David Sager and its assignee, Cardtek.

45. Defendants have been and continue to directly and/or indirectly (by inducement and/or contributory infringement) and willfully infringe one or more claims of the '593 Patent in violation of 35 U.S.C. § 271, including, but not limited, to Claim 1.

46. Defendants have been and continue to directly and/or indirectly infringe the '593 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '593 Patent in violation of 35 U.S.C. § 271(a).

47. Defendants are and/or have been aware of this invention. Accordingly, Defendants are liable for infringement.

48. As a result of Defendants' infringement of the '593 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

49. Defendants' infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '593 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## SECOND CLAIM

### (Infringement of U.S. Patent No. 8,600,770)

50. Cardtek re-alleges and incorporates herein by reference Paragraphs 1-51 of its Complaint.

51. The '770 Patent, entitled "Payment Convergence System and Method" was duly and lawfully issued on December 3, 2013. A true and correct copy of the '770 Patent is attached

hereto as Exhibit 2.

52.    The '770 Patent names Robert David Sager as inventor. Ex. 2 at 1.

53.    The '770 Patent has been in full force and effect since its issuance. Cardtek owns by assignment the entire right, title, and interest in and to the '770 Patent, including the right to seek damages for past, current, and future infringement thereof.

54.    The '770 Patent is "a method and system …provided for convergence of multiple independent payment applications into a single payment vehicle." *Id*.

55.    The '770 Patent explains that the use of Smart Card technology "permits multiple independent payment options to be bundled into a single payment vehicle." *Id*. at 5.

56.    The '770 Patent states that "[t]he inventions also permit the convergence at the point of sale (POS) of information about multiple independent payment options using the Smart Card technology." *Id*.

57.    Cardtek is informed and believes, and thereon alleges, that Defendants have infringed and unless enjoined will continue to infringe one or more claims of the '770 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, Cardtek's technology that use the POS payment convergence system and method in an infringing manner.

58.    For example, the '770 accused products embody every limitation of at least claim 1 and 7 of the '770 Patent, literally or under the doctrine of equivalents, as set forth below. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

59.    Defendants infringing technology of Claim 1 comprising: "a payment convergence system; a portable storage medium; a primary source information stored on said storage medium;

at least one secondary payment source information stored on said storage medium; and a convergence information stored on said storage medium, said convergence information comprising instructions readable by a point of sale terminal accessing said storage medium while said storage medium is located at the location of said point of sale terminal, said instructions being used by said point of sale terminal for determining appropriate combination and order of utilization of said primary payment source information and said secondary payment source information to provide a single payment vehicle by communicating electronically through said point of sale terminal with said primary payment source and said at least one secondary payment source, such that payment is obtained by said point of sale terminal by determining at said point of sale terminal a primary payment amount to be collected from said primary payment source and at least one secondary payment amount to be collected from said at least one secondary payment source."

60.     Defendants infringing technology of Claim 7 comprising: "A method providing payment for transaction comprising the steps of: storing primary payment source information and consumer credit instructions on a portable storage medium, said consumer credit instructions including order information, determining a transaction cost, obtaining said primary payment source information and said consumer credit instructions from said storage medium via a point of sale terminal while said storage medium is located at the location of said point of sale terminal; utilizing said order information to determine an order for utilizing said primary payment source information and information regarding a consumer credit vehicle; analyzing by said point of sale terminal a primary payment amount to be provided by said primary payment source for the transaction and a remainder; and assigning electronically for payment the remainder amount to said consumer credit vehicle through said point of sale terminal by utilization of said consumer credit instructions, such that payment is obtained by said point of sale terminal by determining at said point of sale terminal a primary payment amount to be collected from said primary payment

source and at least one secondary payment amount to be collected from said consumer credit vehicle."

<u>*Kroger Rewards Card Infringement of Patent '770 Claim 1*</u>

61.    The Kroger REWARDS ACH Card ("the REWARDS Card") is used to perform a payment transaction and is a payment convergence system (e.g., "Discount is redeemable only at Kroger Family of Companies Fuel Centers when you redeem at least 100 existing fuel points earned in a single month. Must be approved for the Kroger REWARDS World Mastercard® to qualify for this offer. You must scan, redeem points and pay with your Kroger REWARDS World Mastercard® in order to receive the fuel discount," and "Your Kroger REWARDS World Mastercard is your Shopper's card, Mastercard, and rewards card all in one"). *See* https://www.krogermastercard.com/credit/faqs.do.

62.    The Kroger REWARDS Card is a smart credit card and therefore a portable storage medium, with a primary payment source information stored on said storage medium (i.e., the card is also linked to a first account associated with a "Shopper's card number."). By spending money, the Card Holder accumulated "fuel points," which are stored in a rewards account associated with the Shopper's card number and REWARDS card. To use the points, "You must scan, redeem points and pay with you Kroger REWARDS World Mastercard in order to receive the fuel discount," such that information about the Shopper's card fuel points account must be stored on the card. *Id*.

63.    In addition to the first account, at least one secondary payment source information stored on said storage medium. For example, the REWARDS Card is a credit card that includes information regarding a user's credit card account, where the credit card amount represents the credit limit of the user and corresponds to the money that is available for the user to use as it sees

fit. This credit card is the secondary payment source in addition to the primary payment source (i.e., the fuel account).

64.     Since "You must scan, redeem points and pay with your Kroger REWARDS World Mastercard in order to receive the fuel discount," instructions readable by the POS terminal are necessarily stored on the REWARDS card and accessed at the POS terminal where the Card is scanned. *Id*. The REWARDS Card therefore contains convergence information stored on said storage medium, with said convergence information comprising instructions readable by a POS terminal accessing said storage medium while said storage medium is located at the POS terminal.

65.     These instructions are then used by the POS terminal for determining appropriate combination and order of utilization of the primary payment source information (i.e., the fuel account) and the secondary payment source (i.e., the credit card) information to provide a single payment vehicle by communicating electronically through the POS. Upon scanning, the Card communicates electronically with the POS terminal, and the POS terminal accesses the Shopper's fuel points account information to establish the amount of fuel points to be used. The POS terminal utilizes The Shopper's Fuel Points account to redeem points and decrease the total owed per 100 points. The ACH card cannot make payments without the POS terminal, and the POS terminal cannot satisfy a balance without scanning the ACH card.

66.     Payment is therefore obtained at the POS by determining at a primary payment amount to be collected from the primary payment source and determining at least one secondary payment amount to be collected from one secondary payment source (i.e., the REWARDS Card account), such that the redeemed fuel points from the primary account and the credit card account collectively equal and satisfy the transaction total.

*Kroger Rewards Card Infringement of Patent '770 Claim 7*

67.     The Kroger REWARDS ACH Card ("the REWARDS Card") is used to perform a payment transaction that stores primary payment source information and consumer credit card instructions (i.e., a bank card, or secondary payment source) on a portable storage medium, with the consumer credit instructions including order information.[1] Since the Card is "a rewards card and check card all in one!", it is a portable storage medium. *Id*. It is also linked to a first account (primary payment source) with a "Shopper's card number."

68.     The REWARDS Card stores consumer credit instruction when the user spends money, therefore earning "fuel points", which are stored in a rewards account (primary payment source) that the user may redeem at a later date. The points must be stored so that they can be redeemed. The bank card account represents the money that is available for the user to spend as it sees fit, such that the Card also stores information about a consumer credit vehicle (secondary payment source) (i.e., "Fuel discounts are available at The Kroger Co. Family of Stores Fuel Centers each time you redeem at least 100 existing and unexpired points" and "It links directly to your existing checking account...simply swipe and go."). *Id*.

69.     Moreover, the card determines a transaction cost, or amount to be paid since, every time 100 fuel points is redeemed, the balance owed is reduced. So, to determine the amounts to be paid, the total transaction cost must be obtained first.

70.     Upon the user scanning the card, the Card obtains the primary payment source information the consumer credit instructions from said storage medium via a POS terminal with the said storage medium located at the POS. Every time 100 fuel points are redeemed, the balance owed is reduced, such that the REWARDS Card must store information pertaining to the order or

---

[1] While the specification does not use the term "order information," it does state that convergence information can include instructions, and the instructions "can include such information as the order for utilizing the various payment sources…." Col. 4, ll. 58 et seq. Therefore, "order information" is construed as information pertaining to the order of utilizing payment sources.

utilization of payment sources. The user therefore first redeems points and then pays the remaining balance. As such, the card processes the order information to determine an order for utilizing said primary payment source and consumer credit vehicle information.

71.     Moreover, by reducing the balanced owed every time 100 fuel points are redeemed, the POS terminal must work in conjunction with the REWARDS card to determine the amount of fuel points to redeem. The POS then determines a primary payment amount to be provided for the transaction. It then determines the remaining amount and electronically assigns the remainder amount to said consumer credit vehicle through the POS terminal by utilization of the consumer credit instructions. Once the balance is reduced by the fuel points (the primary account), the remaining balance owed by the REWARDS account (secondary payment source) is determined, and then satisfied to complete the transaction.

### *Starbucks Rewards Card Infringement of Patent '770 Claim 1*

72.     The Starbucks Rewards Visa Card ("the Rewards Card") is used to perform a payment transaction and is a payment convergence system comprising of a portable storage medium, i.e., the Rewards Card is a physical credit card.

73.     There is a primary payment source information and at least one secondary payment source stored on said storage medium. Signing up for the Rewards Card links the physical credit card to a stars rewards account, so that, when the user makes a purchase, the stars account is updated ("4,500 Bonus Stars After You Spend $500 On Purchases In The First 3 Months From Account Opening."). *See* https://www.starbucks.com/rewards. The Stars Rewards Account is the primary payment source. The Visa account is the secondary payment source.

74.     Card owners use the stars in a stars account to reduce the total of their purchase (i.e., "you can choose to redeem your Stars for a free beverage customization… when you're

paying at a participating Starbucks store."). *Id*. Because the card and redeeming of stars is accomplished at the time of order, a barista utilizes the POS, and the POS must be capable of accessing the information stored on the Visa Card. The Card therefore maintains a convergence information stored on said storage medium, with said convergence information comprising instructions readable by a POS terminal accessing a storage medium located at the POS terminal.

75.     The POS uses the instructions to determine an appropriate combination and order based on the primary payment source information (Stars Rewards Account) and secondary payment source (Visa Account) information to then provide a single payment vehicle. For example, when redeeming 25 stars, the customer may only offset the cost of the "beverage modifiers: an added espresso shot…" because it is added extra to the main drink, such that there is necessarily a remaining cost associated with the drink. *Id*. The stars are used to offset the cost of the added drink modifier. The POS terminal must therefore calculate a total for the transaction, identify the stars account (primary payment source), as well as the visa card account itself (secondary source of payment), to determine the remaining total once the stars are redeemed. The remaining total is then charged to the secondary payment source, which is done by the POS terminal communicating with the stars account. The POS, upon determining that there are sufficient stars, reduces the number of stars in the stars account, and applies the stars to the sale by reducing the total of the sale by the cost of the added drink modifier, and charges the remaining cost owed to the secondary payment source (i.e., the Visa Card account).

76.     As a result, payment is obtained by said POS terminal by determining at the POS terminal a primary payment amount to be collected from said primary payment source and at least one secondary payment amount to be collected from said at least one secondary payment source.

*Starbucks Rewards Card Infringement of Patent '770 Claim 7*

77.     The Starbucks Rewards Card is a method used to perform a payment transaction and provides payment for the transaction. Since the Rewards Card is a physical credit card, the Card stores primary payment source information and consumer credit instructions on a portable storage medium, along with consumer credit instructions including order information.

78.     The Card determines a transaction cost and uses the stars to offset part of the transaction cost (e.g., an added drink modifier). To determine a transaction cost, a POS terminal must first calculate a total for the transaction.

79.     Signing up for the rewards card Visa links the physical card to a stars rewards account, and when the user makes a purchase, the Rewards account, i.e., primary payment source account, is updated (e.g., "4,500 Bonus Stars after you Spend $500 on Purchases In The First Three Months From Account Opening."). *Id*. The Card therefore obtains a primary payment source information and consumer credit instructions from said storage medium via a POS terminal. Moreover, "you can choose to redeem your Stars for a free beverage customization" which takes place when the user pays at a participating store. *Id*. Because the card and redeeming of stars is accomplished at the time of order by asking the barista, the POS used by the barista must be capable of accessing the information stored on the Visa Card, which is done at the storage medium, i.e., the POS terminal.

80.     Moreover, because the charge to the Card and redeeming of the stars is accomplished at the time of order, the POS used by the barista must be capable of accessing the information stored on the card. This causes the POS to reduce the total by first determining the amount owed by the primary account (stars account) and does so by utilizing information regarding a consumer credit vehicle.

81.     For example, when redeeming 25 stars, the customer may only offset the cost of

"beverage modifiers: an added espresso shot…" *Id*. Since the modifier is an add-on to the main drink, there is necessarily a remaining cost associated with the drink. The stars are therefore used to offset the cost of the added drink modifier. To do so, the POS terminal must first calculate a total for the transaction, identify the stars account (primary payment source) associated with the Visa card offered for payment, redeem the stars to reduce the total thereby identifying the amount to be paid by the visa card account itself (secondary payment source). And since the stars are used to offset the cost of the added drink modifier, the POS must communicate electronically with the stars account for payment the remainder amount to said consumer credit vehicle by utilization of said consumer credit instructions.

82.     The result is that such that payment is obtained by said point of sale terminal by determining at said point of sale terminal a primary payment amount to be collected from said primary payment source (stars rewards account) and at least one secondary payment amount (e.g., Visa card) to be collected from said consumer credit vehicle.

83.     On information and belief, the infringing technology in the Defendants' Rewards Cards was obtained directly or indirectly from disclosure later patented by Robert David Sager and its assignee, Cardtek.

84.     Defendants have been and continue to directly and/or indirectly (by inducement and/or contributory infringement) and willfully infringe one or more claims of the '770 Patent in violation of 35 U.S.C. § 271, including, but not limited, to claim 1 and 7.

85.     Defendants have been and continue to directly and/or indirectly infringe the '770 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '770 Patent in violation of 35 U.S.C. § 271(a).

86.    Defendants are and/or have been aware of this invention. Accordingly, Defendants are liable for infringement.

87.    As a result of Defendant's infringement of the '770 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

88.    Defendants' infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '770 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## THIRD CLAIM

### (Infringement of U.S. Patent No. 10,628,818)

89.    Cardtek re-alleges and incorporates herein by reference Paragraphs 1-90 of its Complaint.

90.    The '818 Patent, entitled "Payment Convergence System and Method" was duly and lawfully issued on April 21, 2020.  A true and correct copy of the '818 Patent is attached hereto as Exhibit 3.

91.    The '818 Patent names Robert David Sager as inventor. Ex. 3 at 1.

92.    The '818 Patent has been in full force and effect since its issuance.  Cardtek owns by assignment the entire right, title, and interest in and to the '818 Patent, including the right to seek damages for past, current, and future infringement thereof.

93.    The '818 Patent is "a method and system …provided for convergence of multiple independent payment methods." *Id.*

94.    The '818 Patent explains that the use of Smart Card technology "permits multiple

independent payment options to be bundled into a single payment vehicle." *Id*. at 5.

95.    The '818 Patent states that "[t]he inventions also permits the convergence at the point of sale (POS) of information about multiple independent payment options using the Smart Card technology." *Id*.

96.    Cardtek is informed and believes, and thereon alleges, that Defendants have infringed and unless enjoined will continue to infringe one or more claims of the '818 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, Cardtek's technology that use the POS payment convergence system and method in an infringing manner.

97.    For example, the '818 accused products embody every limitation of at least claim 1 of the '818 Patent, literally or under the doctrine of equivalents, as set forth below.  The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

98.    The infringing technology operates as a payment convergence system comprising of: "a point of sale terminal in data communication with a processor, said processor being configured to execute a payment protocol; and an input device associated with said point of sale terminal, said input device being configured to provide convergence information to said point of sale terminal, wherein said convergence information comprises instructions used by said payment protocol for determining appropriate combination and order of utilization of a primary payment source and a secondary payment source for a transaction, such determination being made prior to completion of the transaction, wherein said payment protocol facilitates use of a single payment vehicle associated with the transaction by communicating electronically through said point of sale terminal with said primary payment source and said secondary payment source, and wherein said

payment protocol determines a primary payment amount to be collected from said primary payment source and a secondary payment amount to be collected from said secondary payment source."

### *Kroger Rewards Card Infringement of Patent '818 Claim 1*

99.    The Kroger REWARDS World Mastercard ("the REWARDS Card") is used to perform a payment transaction. For example, the card is uses by scanning, redeeming points, and paying with your Kroger REWARDS World Mastercard in order to receive a fuel discount. Because the card must be scanned, there must be a scanning device (i.e., a POS device) that scans the card and is configured to execute a payment protocol.

100.    Moreover, the Kroger rewards card is a smart credit card, and therefore an input device. The card is also linked to a first account associated with a "Shopper's card number"). By spending money, the user earns "fuel points," which are stored in a rewards account associated with the Shopper's card number and the REWARDS card. Since "you must scan, redeem points, and pay with Your Kroger REWARDS World Mastercard" to receive the fuel discount, the information about the Shopper's card fuel points account must be stored on the card. *See* https://www.krogermastercard.com/credit/faqs.do.

101.    Because the REWARDS World Mastercard is a Shopper's card, Mastercard, and rewards card all in one, the REWARDS Card communicates electronically with the POS terminal, and the POS terminal accesses the Shopper's Fuel Points account information to establish the amount of fuel points to be used when a transaction occurs. The POS terminal utilizes The Shopper's Fuel Points account to redeem points and decrease the total owed by 55¢ per 100 points. The REWARDS Card cannot make payments without the POS terminal, and the POS terminal cannot satisfy a balance without scanning the REWARDS Card.

102.    If the customer is required to scan the REWARDS card such that fuel points and the credit card are used to satisfy the transaction, the POS terminal necessarily uses the REWARDS card to communicate electronically with the primary payment source (fuel points account) and the secondary payment source (credit card account).

103.    Since every time 100 fuel points is redeemed, the balance owed is reduced by 55¢, the payment protocol must determine how many fuel points to collect from the primary account (amounting to a corresponding cash figure to satisfy a portion of the total owed) and determine, by subtracting the primary account figure from the total, the amount to be collected from the secondary payment source (the credit card account).

### *Starbucks Rewards Card Infringement of Patent '818 Claim 1*

104.    Starbucks Rewards Visa Card ("the Rewards Visa") is used to perform a payment transaction and is also a physical credit card. By signing up for the Rewards Visa, the physical card is linked to the stars rewards account. Because you can use the physical card at participating Starbucks stores, there is necessarily a POS terminal configured to execute a payment protocol associated with the VISA card.

105.    When the user makes a purchase, the stars account is updated (i.e., "4,500 Bonus Stars After You Spend $500 On Purchases In The First 3 Months From Account Opening."). *See* https://www.starbucks.com/rewards. The card must therefore link both the credit card payment account and the Rewards program account such that the rewards program account is updated when the credit card payment account is used.

106.    Once enough stars are accumulated, they can be redeemed to offset the cost of a beverage. For example, when redeeming 25 stars, for example, the customer may only offset the cost of "beverage modifiers: an added espresso shot…" *Id*. Since the modification is an add-on to

the main drink, there is necessarily a remaining cost associated with the drink. Because the stars are used to offset the cost of the added drink modifier, the POS terminal must first calculate a total for the transaction, identify the stars account (primary payment source) associated with the Visa card offered for payment, as well as the visa card account itself (secondary payment source).

107.    Since the Visa card is a physical card, there must be a POS terminal that interfaces with the card to make a payment. And to offset the cost (e.g., the added drink modifier) with the Rewards points, the POS terminal must electronically determine the stars from the stars account (primary payment source) to be applied in satisfying part of the transaction. It then must communicate with the Visa account (secondary payment source) to satisfy the remaining balance of the transaction.

108.    Because the POS terminal must first calculate a total for the transaction, it must identify the stars account (primary payment source) associated with the Visa card offered for payment, use the number of stars to determine the reduction, and then use the visa card account itself (secondary payment source) to satisfy the remaining cost. The POS terminal therefore collects from the primary payment source (stars account) and satisfies the remainder with the secondary payment source (the Visa card account).

109.    On information and belief, the infringing technology in the Defendants' Rewards Card was obtained directly or indirectly from disclosure later patented by Robert David Sager and Cardtek, its assignees.

110.    Defendants have been and continue to directly and/or indirectly (by inducement and/or contributory infringement) and willfully infringe one or more claims of the '818 Patent in violation of 35 U.S.C. § 271, including, but not limited, to Claim 1.

111.    Defendants have been and continue to directly and/or indirectly infringe the '818

Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '818 Patent in violation of 35 U.S.C. § 271(a).

112.    Defendants are and/or have been aware of this invention. Accordingly, Defendants are liable for infringement.

113.    As a result of Defendants' infringement of the '818 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

114.    Defendants' infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '818 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a.  A judgment in favor of Plaintiff that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '593 Patent, the '770 Patent, and the '818 Patent;

b.  A permanent injunction prohibiting Defendant from further acts of infringement of '593 Patent, the '770 Patent, and the '818 Patent;

c.  A judgment and order requiring Defendant to pay Plaintiff its damages, enhanced damages, costs, expenses, and pre-judgment and post-judgment interest for Defendants' infringement of the '593 Patent, the '770 Patent, and the '818 Patent;

d.  A judgment and order requiring Defendant to provide an accounting and to pay supplemental

damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

e.  A judgment that Defendants' infringements have been and are willful, and award Plaintiff enhanced damages pursuant to 35 U.S.C. § 284, up to and including trebling of damages;

f.  A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant; and

g.  Any and all other relief as the Court may deem appropriate and just under the circumstances.

Dated: February 6, 2023                    Respectfully submitted,

SCHIFFER HICKS JOHNSON PLLC

/s/ Logan E. Johnson
Logan E. Johnson
Texas Bar No. 24013855
Federal Bar No. 24991
Varant Yegparian
Texas Bar No. 24070893
Federal Bar No. 2174299
700 Louisiana Street, Suite 2650
Houston, Texas 77002
Tel: (713) 357-5150
Fax: (713) 357-5160
ljohnson@shjlawfirm.com
vyegparian@shjlawfirm.com

Melissa R. Smith
TX State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Plaintiff*
*Cardtek International, Inc.*