**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CARDTEK INTERNATIONAL, INC., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:23-CV-00045-JRG-RSP |
| | § | |
| THE KROGER CO., | § | |
| | § | |
| *Defendants*. | § | |

**CLAIM CONSTRUCTION ORDER**

Plaintiff Cardtek International, Inc. alleges infringement by The Kroger Co. of claims from United States Patent Nos. 7,039,593 ("'593 Patent"), 8,600,770 ("'770 Patent"), and 10,628,818 ("'818 Patent").[1] On June 27, 2024, the Court held a *Markman* hearing on the disputed terms presented by the parties. Shortly before the start of the June 27, 2024 Markman hearing, the Court provided preliminary constructions to assist in focusing the arguments.

The parties present two claim construction disputes across the asserted patents. The parties dispute the proper construction of "convergence information" and of "instructions." The parties have agreed to constructions of "order" and "processor."

## I. BACKGROUND

The patents purport to teach a Smart Card technology that provides for the convergence of multiple independent applications. Previously, a Smart Card might include multiple applications such as a credit card, insurance information, or user identification information. *See generally* '593

[1] The '770 Patent and the '818 Patent are continuations of the '593 Patent and share its specification. All citations to the specification are to the '593 Patent.

at 2:1-11. However, the patents describe that a problem with these prior Smart Cards was that they were "strictly 'horizontal' referencing and updating of information and instructions for each application independently." *Id*. at 2:27-28. The patents contend there was no system for "vertically" combining information from the different applications. *Id*. at 2:29-33.

The patents contend this requires inconvenience in the use of the Smart Card. The patents describe the instance where a user wishes to pay in part with insurance and in part with other sources but would have to do so in separate transactions despite having all the required information on a single card. *See id*. at 240-52.

To address this deficiency, the patents describe the use of "convergence information" that would include instructions on using information from different applications in a single transaction. *See id*. at 4:11-48.

Claim 1 of the '593 Patent, which is exemplary of the claims at issue, recites:

1. A method of payment for a transaction comprising the steps of:

establishing a transaction total;

storing convergence information on a portable storage medium, said convergence information including data about a plurality of payment sources for the transaction and said convergence information including processing instructions, said processing instructions including order information for utilization of said plurality of payment sources;

obtaining said convergence information from said storage medium at a point of sale terminal while said storage medium is located at the location of said point of sale terminal;

processing of said order information by said point of sale terminal to determine from said

plurality of payment source, a primary payment source to be utilized first for the transaction, and at least one secondary payment source to be utilized for the transaction after said primary payment source is utilized;

utilizing of said convergence information to communicate electronically through said point of sale terminal with said primary payment source to establish a primary payment amount from said primary payment source;

determining a secondary payment amount to be obtained from said at least one secondary payment source to satisfy said transaction total; and

utilizing of said convergence information to communicate electronically through said point of sale terminal with said at least one secondary payment source to secure payment of said secondary payment amount;

wherein at least two payment sources are utilized to satisfy said transaction total.

’593 Patent at 11:41-12:6.

## II. GENERAL LEGAL STANDARDS

### A. Generally

“[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.” *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). As such, if the parties dispute the scope of the claims, the court must determine their meaning. *See, e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007) (Gajarsa, J., concurring in part); *see also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), *aff’g*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*).

Claim construction, however, “is not an obligatory exercise in redundancy.” *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Rather, “[c]laim construction is a

matter of [resolving] disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims . . . ." *Id.* A court need not "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court." *Id.*

When construing claims, "[t]here is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (citing *Phillips*, 415 F.3d at 1312–13). Courts must therefore "look to the words of the claims themselves . . . to define the scope of the patented invention." *Id.* (citations omitted). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."). But for claim terms with less-apparent meanings, courts consider "those sources available to the public that show what a person of skill in the art would have understood disputed claim language

to mean . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314.

## III. THE LEVEL OF ORDINARY SKILL IN THE ART

The level of ordinary skill in the art is the skill level of a hypothetical person who is presumed to have known the relevant art at the time of the invention. *In re GPAC*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). In resolving the appropriate level of ordinary skill, courts consider the types of problems and the solutions to those problems encountered in the art, the speed of innovation, the sophistication of the technology, and the education of workers active in the field. *Id.* Importantly, "(a) person of ordinary skill in the art is also a person of ordinary creativity, not an automaton." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).

Here, neither party presents a proposed level of ordinary skill in the art for analysis, and the Court finds it does not affect the issues presented.

## IV. THE AGREED TERMS

### A. "Order"

The Parties agreed to the following construction:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "Order"<br><br>'593 Patent: Claim 1; '770 Patent: Claims 1, 7; '818 Patent: Claim 1 | "Sequence" |

Dkt. No. 65. In view of the parties' agreement on the proper construction of the identified terms, the Court hereby **ADOPTS** the parties' agreed construction.

### B. "Processor" ('818 Patent, Claim 1)

Likewise, before the hearing, the Court provided the parties a preliminary construction for "processor" being "an entity that has relationships with all relevant parties, or entities that collectively have relationships with all relevant parties." The Court derived this construction from the lexicography in the specification at 8:17-22.

At the hearing, the Parties both agreed to the Court's proposed construction. Therefore, the Court finds the appropriate construction of "processor" is "an entity that has relationships with all relevant parties, or entities that collectively have relationships with all relevant parties."

## V. THE DISPUTED TERMS

### A. "Instructions" ('593 Patent, Claim 1; '770 Patent, Claims 1 and 7; '818 Patent, Claim 1)

| Plaintiff's Position | Defendants' Position |
|---|---|
| Plain meaning, no construction necessary | Directions, stored on the portable storage medium or input device and being more than merely payment source date/information, providing appropriate order and/or apportionment of payments from multiple payment sources without need for human input |

Defendant contends that various statements in the prosecution history are disclaimers that should be included in the construction of "instructions." First, Defendant argues the applicant's statements regarding "stored on the portable storage medium or input device" should be read as disclaimer based on the use of "instant invention" throughout the applicant's statements. Defendant points to the specific statement that "the claimed limitation in which **instructions** …, are **stored on a storage medium** such as a smart Card. This is a tremendously important aspect of the Applicant's invention …" (Dkt. No. 62-5 at 4-6.)

Plaintiff contends this is not a disavowal of the plain meaning of "instructions" since the

claims referenced in the above statement had a separate limitation of "stored on a storage medium.[2]" Plaintiff argues that this demonstrates the applicant knew how to draft narrower claims but chose not to do so here.

The Court agrees with Plaintiff. While the applicant did use language about his invention that would suggest his statement might be disclaimer, here the statement clearly related to another limitation and was not a disavowal of the ordinary scope of "instructions."

Second, Defendant argues that another applicant statement is a disavowal that requires the instructions to automatically complete the transaction without human input. For this argument, Defendant points to applicant's statement that "the instant invention's convergence information which automatically identifies at the point of sale all payment sources necessary to complete a transaction," and "the instant invention allows the source of payment … to be identified automatically." (Dkt. No. 62-4 at 16-18.)

Plaintiff contests Defendant's inclusion of "without human input" as counter to the specifications and the dependent claims. Plaintiff points to Figure 3 and the description in the specification and to claim 10 of the '593 patent as both expressly requiring human input to complete a transaction. In the hearing, Plaintiff further argued that the identified statements also relate to "convergence information" not "instructions."

The Court finds that the applicant's statements do not support the scope of disavowal Defendant proposes. First, the cited statements relate to "convergence information," not "instructions." The applicant does not suggest that it is the claimed "instructions" that "automatically identif[y] … all payment sources," only that the "convergence information" does. Further, the scope

[2] At the hearing, Defendant contested this and alleged that several of the claims did not include a "stored on storage medium" limitation. The Court has reviewed the prosecution history and the claims that were presented to the Patent Office with the cited applicant statements and finds that all presented claims had an analogous limitation.

of the applicant's statements is only in automatically identifying payment sources, not automatically completing the transaction.

Third, defendant contends "instructions" must be construed as "more than payment source account information." Defendant points to the prosecution history where the applicant distinguished from prior art where a "smart card includes both health insurance information and credit card account information, this is merely a multiple application smart card and does not include any instructions as to the order of utilizing payment sources." (Dkt. No. 62-6 at 16.) Defendant argues then that "instructions" must be more than merely payment source information like health insurance information or credit card account information.

Plaintiff contends the claims already include limitations that "instructions" include more than payment source account information. Plaintiff points to various limitations that "instructions" include "order information" or the like.

The Court finds "more than payment source account information" is unnecessary. The claims themselves already require that "instructions" include more than payment source information to various degrees. As such including this limitation would only add confusion to the claims.

The Court finds that "instructions" has its plain and ordinary meaning.

**B. "convergence information" ('593 Patent, Claim 1; '770 Patent, Claim 1; '818 Patent, Claim 1)**

| Plaintiff's Position | Defendants' Position |
|---|---|
| Information regarding the method of payment for the transaction | Information that control apportionment of payment amounts from multiple payment sources to settle a transaction without human input |

Defendant argues that because the claimed "instructions" are a part of "convergence

information," its foregoing arguments apply equally here. (Dkt. No. 62 at 17.) Separately, Defendant complains that Plaintiff's proposed construction is not helpful to the jury and it ignores the prosecution history narrowing of the term. In particular, Defendant points to statements by the applicant that "the instant invention's convergence information which automatically identifies at the point of sale all payment sources necessary to complete a transaction." (Dkt. No. 62 at 18.)

Plaintiff argues the applicant acted as his own lexicographer in the summary of the invention providing the Plaintiff's proposed construction. Plaintiff contests the Defendant's inclusion of "controls apportionment of payment amounts from multiple payment sources" because it would exclude certain embodiments and claims. In particular, Plaintiff contends claim 2 of the '593 patent would make no sense under Defendant's construction as it would require convergence information to control what the claim requires the "primary payment source" to control. Plaintiff likewise repeats its opposition to excluding "human input."

Defendant replies there is no inconsistency with claim 2 when "convergence information" controls apportionment but the payment source determines the "payment amount."

The Court finds that neither party is entirely correct. The Court finds that Plaintiff is correct that the patentee acted as its own lexicographer. The Court finds that the use of quotation marks around a claim term when explaining the meaning of the term is definitional such as done here. Therefore, the Court finds that "information regarding the method of payment for the transaction" is an appropriate definition of "convergence information.

However, the Court also finds that Defendant is also correct that the prosecution history provides more to this definition. The prosecution history provides "the instant inventions' convergence information [] automatically identifies … all payment sources necessary to complete a transaction." (Dkt. No. 62-4 at 16-18.) The applicant's description of "the instant invention" is clearly

meant as a definitional. However, this disavowal does not extend to "control apportionment of payment amounts from multiple payment sources to settle a transaction." First, this language is not included in the prosecution history. Second, the prior art the applicant distinguished was a "charge splitter" that required the user to manually input all payment information rather than pulling that information from card. (Dkt. No. 62-5 at 4-5.) Under the narrower scope of the applicant's statement rather than Defendant's construction, there is no conflict with Figure 3 or Claim 10. Figure 3 only discusses a user selecting a payment source, not inputting the payment source information. Claim 10 does not require any human input, only that a selection is made.

As such, the Court finds the appropriate construction of "convergence information" is "information regarding the method of payment for the transaction that automatically provides payment source information."

## VI. CONCLUSION

The Court **ORDERS** each party not to refer, directly or indirectly, to its own or any other party's claim-construction positions in the presence of the jury. Likewise, the Court **ORDERS** the parties to refrain from mentioning any part of this opinion, other than the actual constructions adopted by the Court, in the presence of the jury. Neither party may take a position before the jury that contradicts the Court's reasoning in this opinion. Any reference to claim construction proceedings is limited to informing the jury of the positions adopted by the Court.

**SIGNED this 10th day of July, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE